UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Floyd Brunson, *et al.*,

    Plaintiffs,

v.                                              Case No. 12-14109

Joseph Castro, *et al.*,                Sean F. Cox
                                                       United States District Court Judge

    Defendants.
_____/

## **OPINION & ORDER**

        Acting through counsel, Plaintiffs filed this action against multiple Defendants asserting § 1983 claims and several state-law claims, following the execution of a search warrant at a home while they were present in the home. Plaintiffs have since dismissed Defendant Wayne County from the case and only the claims against the City of Detroit Defendants remain. Following the close of discovery, the City of Detroit Defendants filed a Motion for Summary Judgment. Despite its title, the motion challenges both the sufficiency of the federal claims asserted and the ability of Plaintiffs to support their claims with sufficient evidence. The motion has been fully briefed by the parties and the Court heard oral argument on October 25, 2018. As explained below, the Court concludes that: 1) the § 1983 count against the two individual officers fails to state a § 1983 claim against them, where the complaint contains no factual allegations as to any conduct by either officer, and the officers are therefore entitled to qualified immunity; 2) the § 1983 civil rights conspiracy count also fails to state a claim where the complaint includes no supporting factual allegations, Plaintiffs submit no evidence in support of this claim, and their brief fails to address the challenges to this count; and 3) without a viable

constitutional claim against either officer, the municipal liability count against the City should be dismissed too. Given that the Court is dismissing all federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims and shall dismiss those claims without prejudice.

## BACKGROUND

On September 17, 2012, Plaintiffs Floyd Brunson and Wendy Jefferson filed this action against the following four Defendants: 1) Detroit Police Officer Joseph Castro; 2) Detroit Police Officer L. Rhodes; 3) the City of Detroit; and 4) Wayne County. Castro and Rhodes are sued in their individual capacities only. (Compl. at ¶ 4).

Plaintiffs' Complaint includes the following seven counts: 1) "Section 1983 Against Individuals" (Count I); 2) "Gross Negligence, Willful and Wanton Misconduct" (Count II); 3) "False Arrest" (Count III); 4) "False Imprisonment" (Count IV); 5) "Intentional Infliction of Emotional Distress" (Count V); 6) "Conspiracy" (Count VI); "Federal Law Claims – Wayne County" (Count VII); and 7) "Federal Law Claims – City of Detroit" (Count VIII). The few factual allegations in the complaint are as follows:

8. On September 15, 2011, at 6:00 p.m., Plaintiffs were present at a home located at 2902 Woodmere Street in Detroit, Michigan.[1]
9. At around 6:25 p.m. in the afternoon, Defendants executed a search warrant raid at 2902 Woodmere Street in Detroit, Michigan.
10. During the course of the raid, Defendants allegedly located narcotic paraphernalia and firearms throughout the residence and subsequently unlawfully detained and arrested Plaintiffs.
11. As a result of this unlawful arrest, Plaintiffs were charged with two misdemeanor charges and wrongfully arrested and taken to the Wayne

---

[1]Plaintiffs do not allege that they owned the home, or resided at the home. They merely allege they were present in the home on the date of the search.

2

12. County Jail.[2]
13. Subsequently, each of the misdemeanor charges pending against Plaintiffs were dismissed.
14. That Defendants were belligerent, unreasonable, criminal and malicious in dealing with Plaintiffs.
15. That the amount in controversy exceeds Seventy-Five Thousand Dollars and is otherwise within the jurisdiction of this Honorable Court.
16. That Plaintiffs have suffered great embarrassment, humiliation and distress due to the Defendants' behavior.


12. Subsequently, each of the misdemeanor charges pending against Plaintiffs were dismissed.
13. That Defendants were belligerent, unreasonable, criminal and malicious in dealing with Plaintiffs.
14. That the amount in controversy exceeds Seventy-Five Thousand Dollars and is otherwise within the jurisdiction of this Honorable Court.
15. That Plaintiffs have suffered great embarrassment, humiliation and distress due to the Defendants' behavior.

(Compl. at 3).

Count I, the § 1983 claim against the two individual officers, alleges *in its entirety*, as follows:

16. Plaintiffs incorporate each of the Common Allegations as though fully stated herein.
17. That 42 USC Section 1983 provides for civil liability for deprivation of any right, privilege and immunity carried by the constitution and laws of the United States and the State of Michigan.
18. That at all times material herein, Defendants were acting under color of law.
19. That at all times material herein, said Defendants subjected Plaintiffs to depravation [sic] of their rights, privileges and immunities secured by the Constitution of the United States and, more specifically, Amendments 4 and 14 of the laws of the United States and the State of Michigan.
20. That the above referred to customs and practices implemented by Defendants proximately caused the injuries and losses to Plaintiffs as alleged herein thereby depriving Plaintiffs of their rights, privileges and immunities secured by the United States Constitution and Amendment 4.

WHEREFORE, Plaintiffs demand judgment against Defendants in whatever amount Plaintiffs are entitled together with exemplary and punitive damages, plus interest, costs, and attorney fees.

(Compl. at 3-4).

Count VI, the Conspiracy count against the individual Defendants, alleges, *in its entirety*, as follows:

---

[2]Contrary to this allegation, it is undisputed that Plaintiffs were both released at the scene after the search was concluded. (*See* Jefferson's Dep. at 47-48).

3

> 32. Plaintiffs hereby reallege and restate each and every allegation contained in Paragraphs 2 through 30 as if fully stated herein.
> 33. The acts of the individual Defendants in the bringing of false criminal charges were acts undertaken in concert by the individually named Defendants comprise a conspiracy to violate Plaintiffs' civil rights, pursuant to 42 USC §1983.
> 34. These acts caused damages to Plaintiffs.
>
> WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants in whatever amount Plaintiffs are found entitled together with costs, interest, and attorney fees.

(Compl. at 6-7).

Count VIII asserts a municipal liability claim against the City of Detroit. Count VII asserts a municipal liability claim against Wayne County.

This Court has federal-question jurisdiction over Counts I, VI, VII and VIII and may exercise supplemental jurisdiction over the state-law claims.

After the action was filed, Plaintiffs stipulated to the dismissal of Wayne County, leaving only the City of Detroit Defendants. (*See* D.E. No. 28).

The action was then "stayed as to the City of Detroit defendants pursuant to the Notice of Bankruptcy filed on July 26, 2013" and administratively closed on September 12, 2013. (*See* D.E. Nos. 27 & 29).

This action was reopened on November 30, 2017. On November 30, 2017, this Court issued a new scheduling order that provides that: 1) discovery closes on May 18, 2018; 2) discovery motions are due two weeks prior to the discovery cutoff (which would be May 4, 2018); 3) dispositive motions are to be filed by June 18, 2018; and 3) the final pretrial conference shall be held on October 22, 2018. (D.E. No. 34).

On May 16, 2018, just two days before the discovery cutoff, Plaintiffs filed a motion

4

asking the Court to enter a default judgment "As to Defendant, Leo Rhodes, For Repeated Failure To Comply With Discovery Requests." (D.E. No. 49). In it, Plaintiffs assert that Defendant failed to appear for his deposition on multiple occasions. The motion was referred to Magistrate Judge Stephanie Dawkins Davis.

On June 15, 2018, the City of Detroit Defendants filed a dispositive motion, which Plaintiffs responded to on July 5, 2018.

In an order issued on October 5, 2018, Magistrate Judge Dawkins Davis denied Plaintiff's Motion seeking a default judgment against Defendant Rhodes. (D.E. No. 61).[3]

**ANALYSIS**

As this case in federal court based upon the federal claims, the Court shall address Defendants' challenges to those claims first.

There are two federal claims asserted against the individual Defendants Castro and Rhodes, Counts I and VI, and a municipal liability claim against the City in Count VIII.

Although Defendants' motion is titled a motion for summary judgment, the body of the motion clearly reflects that Defendants are also asserting that Plaintiffs have failed to sufficiently plead their federal claims. (*See* Defs.' Br. at Pg ID 342 arguing, at 338-50 noting that Plaintiffs' complaint does not identify what or how Plaintiffs' Constitutional Rights were violated and that Plaintiffs' "conclusory and ambiguous allegations" are insufficient, at Pg ID 359-60 noting the lack of factual allegations as to any wrongdoing, and at Pg ID 368-69 arguing Plaintiffs failed to

---

[3]The magistrate judge concluded that Rhodes "failed to appear [for his deposition] only once, and remedied that failure by agreeing to an order compelling his attendance. He then apparently appeared for his last noticed deposition. These facts do not suggest that Rhodes acted with willful bad faith." (*Id*. at 5).

5

adequately plead their conspiracy claim).

## I. Plaintiffs' § 1983 Count Against Defendants Castro And Rhodes

In the pending motion, Defendants challenge the § 1983 count against Castro and Rhodes. In doing to, they first note that the § 1983 count does not even identify what or how Plaintiffs' Constitutional rights were allegedly violated. They assert that the conclusory and ambiguous allegations in Plaintiffs' complaint are similar to those in a district court decision where such claims were found to not state a claim. Defendants note that "Plaintiffs here fail to allege that the entry or search was improper. In fact, Plaintiffs allege that the Defendants were acting pursuant to a warrant, apparently conceding that the entry and search was lawful." (Defs.' Br. at 6).

Defendants also assert that Castro and Rhodes are entitled to qualified immunity as to any claims asserted in Count I, and then try to challenge what they believe may be Plaintiffs' intended § 1983 claims. For example, speculating that Plaintiffs may be trying to challenge the request for the search warrant, Defendants state "[a]s Plaintiffs have made no allegations regarding a want of probable cause, to the extent Count I, if found to be adequately pled, asserts a claim for an unconstitutional search, Count I should be dismissed." (Defs.' Br. at 8).

The Court concludes that Count I of Plaintiffs' Complaint fails to state a § 1983 claim against either of these individual Defendants and they are entitled to qualified immunity.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dominguez v. Correctional Med. Svs.*, 555 F.3d 543, 549 (6th Cir. 2009). "There are two general steps to a qualified immunity analysis." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). The court must determine if the facts alleged show the officer's conduct violated a constitutional right and whether that right was "clearly established" at the time of the incident alleged. *Id.* Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officers are not entitled to qualified immunity. *Id.*

Notably, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the alleged action, will not subject an officer to liability. *Id.*

"Section 1983 confers no substantive rights" itself, "but rather creates a 'species of tort liability' for the violation of constitutional rights." *Alexander v. Carter for Byrd*, 733 F. App'x 256, 260 (6th Cir. 2018) (citations omitted). "The threshold inquiry under § 1983, therefore, is to determine 'the specific constitutional right' at issue." *Id.*

Accordingly, in order to determine if Castro or Rhodes are entitled to qualified immunity, the Court must first determine the specific constitutional rights of Plaintiffs they allegedly violated.

In this regard, the Sixth Circuit "has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded

upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). Thus, the Sixth Circuit "has adopted the requirement that a plaintiff allege 'with particularity' all material facts to be relied upon when asserting that a government official has violated a constitutional right." *Terrance*, 286 F.3d at 842. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," because vicarious liability is not applicable to § 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009).

Here, Plaintiffs are represented by counsel. Yet Plaintiffs' Complaint includes remarkably few factual allegations regarding the underlying incident, and *no factual allegations regarding any conduct by the two individual Defendants.*

Plaintiffs' Complaint includes the names of Castro and Rhodes in its caption and then never uses their names anywhere in the body of the Complaint. The Complaint does not even include their names in Paragraph 4, which identifies the "individual Defendants" as Detroit Police Officers.

The only section of the Complaint that includes any factual allegations is the "Common Allegations Of Fact" section. But that section of the Complaint only references "Defendants," without including any factual allegations specific to the actions of either of the two named individual Defendants. That is insufficient. *See, eg., Marillis v. Township of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (affirming district court's dismissal of two individual defendants where the complaint mentioned them only in one paragraph identifying them as officers and

8

otherwise just made "categorical references to 'Defendants'" without any allegations as to what each defendant allegedly did that violated plaintiffs' rights).

Even if the factual allegations included in the Complaint had been specifically attributed to one of the individual officers, that officer would still have no idea as to how he allegedly violated Plaintiffs' constitutional rights. That is because the only actual factual allegations are: 1) on September 15, 2011, "Plaintiffs were present at a home located at 2902 Woodmere Street in Detroit, Michigan;" 2) at around 6:25 p.m. that day, "Defendants executed a search warrant raid" at that home; 3) "[d]uring the course of the raid, Defendants allegedly located narcotic paraphernalia and firearms throughout the residence," 4) Defendants detained Plaintiffs, who were later charged with two unspecified misdemeanor charges, arrested, and "taken to the Wayne County Jail"[4]; and 5) each of the unspecified misdemeanor charges pending against Plaintiffs were later dismissed.

While that section of the complaint includes the legal conclusions that Plaintiffs were "unlawfully detained" and "unlawful[ly] arrest[ed]," it does so without any explanation and without any supporting factual allegations that would indicate how or why their detentions or arrests were "unlawful."

And Plaintiffs' § 1983 count does not aid the officers in determining the nature of the constitutional claims asserted against them, as it asserts unspecified violations of both the Fourth and Fourteenth Amendments. (*See* Count I, alleging that "Defendants subjected Plaintiffs to depravation [sic] of their rights, privileges and immunities secured by the Constitution of the

---

[4]Again, contrary to this allegation, it is undisputed that Plaintiffs were both released at the scene after the search was concluded. (*See* Jefferson's Dep. at 47-48).

9

United States and, more specifically, Amendments 4 and 14 of the laws fo the United States and the State of Michigan.").

Accordingly, the Court concludes that Count I of Plaintiff's Complaint does not state a viable § 1983 claim against either Castro or Rhodes and they are therefore entitled to qualified immunity.

In response to Defendants' motion, Plaintiffs' Counsel now asserts that Brunson (but not (Jefferson) was subjected to excessive force by some unspecified officer present at the search. (*See* Pls.' Br. at 20, 22 & 23). More specifically, Plaintiffs' Counsel argues that excessive force was used against Brunson in the manner in which the officers transported him downstairs, and in that he was ordered to remain on his knees facing the wall while the search was performed. As to the manner in which the officers took him downstairs, Brunson testified that he was sleeping at the time the officers entered the house, that they pulled him out of bed, handcuffed him, and took him downstairs. (Brunson Dep. at 19-35). Brunson testified:

> Q. Okay. How did they pick you up?
> A. By my arms and just stood me up.
> Q. Okay. They stood you up.
> A. Right.
> Q. Okay. And your handcuffs – are your hands are handcuffed behind your back?
> A. Right. And that's how I lost my footing.
> Q. Okay.
> A. And they didn't never let me get back up to walk, they just pulled me downstairs.
> Q. Okay.
> A. I guess because I was asking them what you doing, what you doing, you know, why you in here.
> Q. Okay. So, after they, they pick you up to your feet and you stumble a little bit, its that correct?
> A.  I stumbled a lot.
> Q. Okay. And were there officers on both side of you?
> A. Both sides of me.

10

>     . . . .
>     Q.   Okay. Now, the officers that are taking you down the stairs, do they still have their hands underneath your arms at this point?
>     A.   Yes, they do.
>     Q.   Okay. And –
>     A.   And like I said, at that point, I had lost my footage.
>     Q.   Okay. So they're basically holding you up and bringing you down the stairs.
>     A.   Right, dragging me down the stairs.

(Brunson Dep. at 34-36).

Plaintiffs' Counsel also appears to challenge the validity of the search warrant. (*Id*. at vii & 17) (Arguing there "was no probable cause for executing the search warrant" and that "[a]lthough the search warrant may appear valid on its face – it is not."). Plaintiffs' brief also makes scattered assertions to other alleged wrongful actions by some unspecified officers at the scene, such as money having been taken from the scene (Pl.'s Br. at 12), and an unidentified officer making a about comment about "another lawsuit," being indicative of retaliation towards Plaintiffs for their having won a prior lawsuit against the City.

"The problem with these allegations," made in a brief in opposition to Defendants' dispositive motion filed after the close of discovery, is that *they are absent from Plaintiffs' Complaint*. *Alexander,* 733 F. App'x at 262. As Defendants noted in their motion, the Complaint contains no factual allegations relating to the validity of the search warrant or the search warrant affidavit. The Complaint also contains no factual allegations regarding any excessive force having been inflicted by either Castro or Rhodes, or any other alleged wrongful conduct by either Castro or Rhodes.[5]

---

[5]The Court notes that Count VIII, titled "Federal Law Claims – City of Detroit" – a count not asserted against either Castro or Rhodes – includes a vague and conclusory allegation that unspecified "Defendants" "beat" and "cuffed" Plaintiffs. (Compl. at ¶ 43). But neither Brunson

11

As such, the Court will not consider these new claims against the individual officers, asserted for the first time in opposition to Defendants' dispositive motion filed after the close of discovery. *Id.; see also City of Columbus, Ohio v. Hotels.com, L.P.,* 693 F.3d 642, 650 (6th Cir. 2012) (district court did not err in declining to address a claim that was raised for the first time in response to summary judgment motion); *Tucker v. Needletrades, Indus. & Textile Emps.,* 407 F.3d 784, 787-89 (6th Cir 2005) (same); *Brax v. City of Grand Rapids, Mich.*, __ F. App'x __, 2018 WL 3526232 at * 5 (6th Cir. 2018) (same).

The Court concludes that both Castro and Rhodes are entitled to qualified immunity as to Count I of Plaintiffs' Complaint.

## II. Plaintiffs' Conspiracy To Violate Civil Rights Claim (Count VI)

Defendants' motion asks the Court to dismiss Count VI, the other federal claim asserted against Castro and Rhodes, because Plaintiffs' Complaint fails to sufficiently plead a civil rights conspiracy claim and because Plaintiffs cannot present any evidence to prove that a civil rights conspiracy existed. (Defs.' Br. at 24).

As Counsel for Plaintiffs' acknowledged at the hearing, Plaintiffs' brief fails to respond to this challenge. Counsel for Plaintiff appeared to concede that this Count should be dismissed. (*See* 10/15/18 Hrg. Tr.).

Moreover, under the law of the Sixth Circuit, that claim is waived by virtue of Plaintiffs' failure to respond to the challenges to this claim. *Alexander*, 733 F. App'x at 261 ("[U]nder the

---

nor Jefferson testified that any officer struck or beat them at any time during the incident. And while Brunson testified that he was placed in handcuffs, Plaintiffs have offered no evidence to indicate that Brunson ever requested that the handcuffs be loosened and had such a request denied.

law of this circuit," the district court properly deemed claim waived where the plaintiff failed to respond to the challenge to the claim in the defendant's motion.); *Haddad v. Sec'y U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568-69 (6th Cir. 2015) (A plaintiff is deemed to have abandoned a claim when he or she fails to address it in response to a dispositive motion.).

Even if Plaintiffs had opposed the dismissal of this claim in their brief, or at the hearing, this Court would still conclude that Plaintiffs have failed to sufficiently plead a civil rights conspiracy claim.

To prevail on a § 1983 civil rights conspiracy claim, a plaintiff must demonstrate that: 1) a single plan existed; 2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and 3) an overt act was committed in furtherance of the conspiracy that caused the injury. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Here, Count VI alleges, in its entirety:

> 32. Plaintiffs hereby reallege and restate each and every allegation contained in Paragraphs 2 through 30 as if fully stated herein.
>
> 33. The acts of the individual Defendants in the bringing of false criminal charges were acts undertaken in concert by the individually named Defendants comprise a conspiracy to violate Plaintiffs' civil rights, pursuant to 42 USC §1983.
> 34. These acts caused damages to Plaintiffs.
>
> WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants in whatever amount Plaintiffs are found entitled together with costs, interest, and attorney fees.

(Compl. at 6-7). It is well-established "that conspiracy claims must be pled with some degree of specificity" and that such "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

In addition, in response to Defendants' motion that also challenges Plaintiffs' ability to offer evidence in support of this claim, Plaintiffs have identified no evidence that could support their conspiracy claim.

Accordingly, for all of these reasons, this Court shall dismiss Count VI of Plaintiffs' Complaint with prejudice.

### III.     Plaintiffs' Municipal Liability Claim Against The City (Count VIII)

Defendants' motion also challenges Plaintiffs' municipal liability count against the City, arguing that without a viable claim against either of the officers for violating their constitutional rights, the claim against the City must be dismissed.

The Court agrees. It is well-established that "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001); *see also Lucas*, 753 F.3d at 622 (There can be no municipal liability without an underlying constitutional violation). The Court shall dismiss Count VIII against the City.

### IV.     Supplemental Jurisdiction Over Plaintiffs' Remaining State-Law Claims

Given that the Court is dismissing all federal claims in this action, this Court has the discretion to dismiss the state law claims without prejudice, rather than exercise supplemental jurisdiction over them. *Scott v. Clay Cnty, Tenn*., 205 F.3d 867, 880 (6th Cir. 2000); *see also* 28 U.S.C. § 1367.

The City of Detroit Defendants submit that would be appropriate here (*see* Defs.' Br. at 17-18) and the Court agrees.

"As a rule of thumb," when "all federal claims are dismissed before trial, the balance of

considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). The Court believes that is true here, especially given the nature of the complaint that was filed in this action. Accordingly, the Court shall decline to exercise supplemental jurisdiction over any state-law claims in this action and shall dismiss those claims without prejudice.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Counts I, VI, and VIII are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION** over the remaining state-law claims (Counts II, III, IV, and V) and those state-law claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

                                                      s/Sean F. Cox
                                                     Sean F. Cox
                                                     United States District Judge

Dated: October 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2018, by electronic and/or ordinary mail.

                                        s/Jennifer McCoy
                                        Case Manager